María Antonia Martínez, et al., on behalf of, etc., Plaintiffs, Appellees and Appellants, *v.* United States Casualty Co. and Municipality of Añasco, Puerto Rico, Defendants, Appellants and Appellees.

No. 11630.　Argued June 12, 1956.—Decided August 9, 1956.

*Emilio de Aldrey* and *Luis Alfredo Colón* for defendants, appellants and appellees. *Víctor M. Brignoni* for plaintiffs, appellees and appellantts.

MR. JUSTICE MARRERO delivered the opinion of the Court.

María Antonia Martínez and Mercedes Guzmán brought an action for damages against the United States Casualty Co. and the Municipality of Añasco, the former in representation of her legitimate son, Richard Juan Ramírez Martínez, and the latter of her recognized natural daughters, Elizabeth and Edna Virginia Ramírez Guzmán.[1] They alleged, substantially, that on August 31, 1950, on the main street of Añasco, José Rodríguez Lamberty, while driving the municipal ambulance at an excessive speed, recklessly and without taking due precautions crashed into a telephone post and hurled

---

[1] Originally, plaintiffs appeared also in their own right, but the complaint was dismissed because it was filed only against the insurer as defendant. Since the cause of action against the municipality had already prescribed when the order of dismissal was entered, the action was then prosecuted exclusively for the benefit of the minors.

Juan Ramírez Caraballo to the pavement, causing him injuries which resulted in his death; and that Ramírez Caraballo's death was due solely and exclusively to the negligence of chauffeur Rodríguez Lamberty, who was operating the vehicle as employee of the said municipality.

Defendants admitted in their answer the occurrence of the accident. They alleged, however, that it was not due to fault or negligence on the part of the chauffeur, but to the fact that the brakes failed as he rounded a curve and he could not bring the vehicle to a stop, "and that the crash occurred when he lost control of the wheel." They also admitted the remainder of the corresponding paragraph.[2] As special defenses, they also alleged that the ambulance in question should be devoted to the transportation of patients of the Añasco hospital rather than of passengers; that the deceased boarded the vehicle without the express or implied authority of the driver or of any authorized officer of the Municipality of Añasco; that when the accident occurred the vehicle was not being used in functions proper to municipal ambulances, but, on the contrary, the person driving it was using the same for purposes altogether foreign to the proper and adequate use to which an ambulance is devoted, without the authority of any officer of the hospital or of the municipality; that the ambulance driver had no authority to transport invitees and he did it of his own accord and at his own risk.

The case went to trial and the parties offered oral and documentary evidence in support of their respective contentions. The lower court rendered judgment sustaining the complaint, ordering the defendants to pay to plaintiffs the total sum of $15,000, plus costs and $300 for attorney's fees, but limiting the insurer's liability to the sum of $5,000,

---

[2] It is alleged in the remainder of the corresponding paragraph of the complaint that the driver of the ambulance ploughed into a telephone post, and that as a result of the crash Juan Ramírez Caraballo was hurled to the pavement receiving injuries which resulted in his death.

which is the maximum insurance coverage. In support of that judgment, it rendered an opinion from which we copy the following findings of fact:

"1.—One Juan Ramírez Caraballo, also known as Juan Caraballo, died on August 30, 1950 from injuries received in an accident in which an ambulance of the Municipality of Añasco was involved and to which reference is made in the allegations of the complaint.

"2.—The cause of the accident was the excessive speed at which the ambulance was traveling at midnight through the streets of Añasco, with defective brakes which failed as the vehicle entered a curve, crashing into and breaking a telephone post and then overturning as a result of the impact.—According to the witnesses for plaintiff, the body of the victim was found lying in the middle of the road about 3 or 4 feet from the broken post, the ambulance having overturned about 60 feet ahead.

"3.—At the time of the accident the vehicle was being driven by one José Rodríguez Lamberty, an insular fireman whom the mayor of the municipality had asked shortly before to drive the ambulance for the purpose of transporting a sick woman to the municipal hospital. Rodríguez Lamberty had taken the patient to the municipal hospital in the ambulance, and when the accident occurred he was taking the patient's husband to a drug store in town to get some medicine.

"4.—The Mayor of Añasco, Alcides Figueroa, had authority from the chief of the insular fire department to use Rodríguez Lamberty, the regular fire-engine chauffeur, to drive the municipal ambulance in case of emergency. On previous occasions the mayor had used the services of this person to drive the municipal ambulance, and on the evening of the accident the mayor requested the services of Juan Rodríguez Lamberty in an emergency, since none of the ambulance drivers, who were municipal employees, was available.

"5.—The minor plaintiffs, Richard Juan Ramírez Martínez, Elizabeth Caraballo Guzmán, and Edna Virginia Caraballo Guzmán, are the children of Juan Ramírez Caraballo, the deceased, on whom they depended exclusively for their support. Richard Juan Ramírez Martínez is at present 16 years old, the other two minor plaintiffs being 7 and 8 years old respectively. At the time of his death Juan Ramírez Caraballo was healthy and

robust, 37 years old, and earned enough to take care of all the needs of his minor children."

Both parties appealed from the judgment thus rendered. We shall first turn to the errors assigned by the defendants. They allege that the lower court erred (1) in holding that the ambulance of the Municipality of Añasco was being driven at the time of the accident by an employee or agent of the municipality, or in the discharge of functions as such, or incidental to the agency previously entrusted to him; (2) in holding that the ambulance . . . ran over Juan Ramírez Caraballo, since the evidence offered by plaintiffs did not reveal the manner in which the accident occurred; (3) in not holding that Juan Ramírez Caraballo was either an intruder in the ambulance or an invitee of the chauffeur, whether expressly or impliedly, and that, therefore, his family had no right to recover compensation for his death; (4) in holding that, even if there was no basis for concluding that the driver of the ambulance at the time of the accident was an agent of the Municipality of Añasco, the municipality is nonetheless directly liable, it appearing from the admissions in defendants' answer that the accident was caused because the brakes of the vehicle failed; (5) in holding that, even though the driver of the ambulance was not regarded as an agent of the Municipality of Añasco at the time of the accident, the insurance company would nonetheless be liable, since under the policy the definition of insured covers any person authorized by the insured to use the automobile; and (6) in holding that the policy issued by codefendant U. S. Casualty Co. in favor of the Municipality of Añasco covered the accident involved in this case.

The errors thus assigned were not committed. As to the first one, it will suffice to cite here what we stated in *González* v. *Cía. Agrícola*, 76 P.R.R. 373, 376, to wit:

". . . the essential point is to determine whether the agent's intention in performing such act, or at the time of the accident, was to serve and protect the interests of his employment and

not his own interest, and *whether the action is incidental to an authorized act, that is, where there is a reasonable and pertinent relation between the agent's act and the principal's purposes, and whether the agent's act tends reasonably to carry out the ultimate objective of the principal. . ."* (Italics ours.)

It is true that, according to the evidence in the record, the chauffeur was only authorized by the mayor to carry the patient from her home to the hospital, but it cannot be said that the purpose in driving the patient's husband to the drug store to get the prescribed medicine was to serve his own interests rather than the interests of the municipality. Moreover, there existed a reasonable and pertinent relation between the chauffeur's act and the interests of the municipality, which tended reasonably to carry out the ultimate objective of the municipality, which is, among others, to provide the best public-charity service to the community.

From the evidence in the record it appears that between 11 and 12 o'clock in the evening of August 31, 1950, an individual identified in the record as the son of Aniceto Rodríguez knocked at the door of Alcides Figueroa, the Mayor of Añasco, and asked him to let him have the ambulance to remove his sick wife to the municipal hospital; that the mayor told him that the chauffeur of the ambulance had just returned with him from a trip, but that he could go to the fire station and ask Rodríguez Lamberty to remove the patient in the ambulance; that Rodríguez Lamberty complied and took the patient to the hospital, where they prescribed a certain medicine which was not available there; that the patient's husband then asked Rodríguez Lamberty to take him to the drug store to get the medicine, which Rodríguez Lamberty did, and that the accident occurred en route to the drug store.[3] Regarding the exact manner in

---

[3] We fail to see why Rodríguez Lamberty was not called as a witness by either party. Neither was the patient's husband (son of Aniceto Rodríguez), possibly because he was in New York at the date of the trial. Their testimony would no doubt have shed much light on the exact manner the accident occurred.

which Juan Ramírez Caraballo met death, there is no direct evidence of any kind in the record. All we know from the record is that the ambulance was traveling at excessive speed, and that upon entering a curve it crashed into a telephone post and broke it in two and then overturned, and that Ramírez Caraballo was found dead nearby. In view of the strong evidence before it, the lower court was able to conclude correctly, as it did, that the accident was due exclusively to the fault and negligence of Rodríguez Lamberty, and that there was no contributory negligence at all on the part of Ramírez Caraballo. The fact that the complaint alleged specific acts of negligence did not preclude the application of the doctrine of *res ipsa loquitur*. In *Román* v. *Mueblería Central*, 72 P.R.R. 320, 323, we stated that: ". . . a considerable number of jurisdictions hold that when the circumstances of the case are of such a nature that the accident would not have occurred except for the defendant's sole negligence and the plaintiff has not the means within his reach to prove the cause of the accident, the doctrine [of *res ipsa loquitur*] is applied despite the allegation of specific acts of negligence which the plaintiff attempted but was unable to prove." We further stated at p. 325 that: ". . . so long as the plaintiff ■ does not show that it was not through his negligence that the accident occurred, the presumption of negligence which said doctrine entails prevails against him." See, also, *Hermida* v. *Feliciano*, 62 P.R.R. 54, and *Cintrón* v. *A. Roig, Sucrs.*, 74 P.R.R. 957, 966. *Cf. Kirchberger* v. *Gover*, 76 P.R.R. 851.

██ The general rule is that the owner of a vehicle is not liable for injuries sustained in an accident by one invited by the chauffeur of the vehicle to ride with him, without his employer's authority. *Rivera* v. *Maldonado*, 72 P.R.R. 448. Blashfield's *Cyclopedia of Automobile Law and Practice*, permanent ed., Vol. 5, § 3016, p. 311. In the case at

bar there is not a scintilla of evidence that the deceased was an invitee, intruder, or transgressor. Therefore, the doctrine just announced does not apply here. It is also a well-settled rule that proof that the defendant is the owner of the vehicle which caused the damages establishes the presumption *juris tantum* that the person driving the machine was an employee or agent of the defendant, and that he was acting within the scope of his employment. *Pereira* v. *Commercial Transport Co.*, 70 P.R.R. 609, 613. Such presumption was not overcome in this case. *Cf. Acosta* v. *Crespo*, 70 P.R.R. 223. Hence, the fourth error alleged by the defendants is overriden, in the first place, by this legal principle, and, in the second place, by defendants' admissions in their answer which were set forth early in this opinion.

■ In the third paragraph of the insurance policy issued by codefendant U.S. Casualty Co. in favor of the Municipality of Añasco, it is clearly stated (in English) that the term "insured" shall include the insured and any person using his automobile . . . with the consent of the former. On the other hand, there is nothing in the policy requiring that the insured vehicle be used exclusively as an ambulance. But even if such requirement existed, the use described in the policy "must be the regular and dominant use to which the vehicle must be put, but this does not mean that that is the only use to which the vehicle may be put and that should an accident occur while it is put to another use, that does not preclude recovery under the policy." *Quiñones* v. *Tropical Beverages*, 74 P.R.R. 338, 348. Therefore, neither was the fifth error assigned committed. As to the sixth error, we need only repeat the above statements.

■■ The only error assigned by plaintiffs is that the lower court erred in fixing the amount of indemnity at the sum of $15,000. According to the evidence, the deceased was 37 years old, healthy, and strong. During the grinding season he loaded sacks of sugar earning $4.80 a day, and

during the dead season he worked as assistant carpenter earning $2.50 a day. The fixing of compensation rests with the sound discretion of the trial court and we will not disturb the amount awarded unless it is shown that there has been a manifest abuse of discretion. In view of the attendant circumstances, we believe there has been no such abuse and that the total sum awarded of $15,000 [4] is sufficient.

Since none of the errors assigned by either party was committed, the judgment will be affirmed.

Mr. Justice Belaval agrees with the result.

Mr. Justice Pérez Pimentel did not participate herein.

---

[4] The lower court ordered the defendants to pay to plaintiff Richard Juan Ramírez Martínez the sum of $5,000, and to plaintiffs Elizabeth and Edna Virginia Ramírez Guzmán the sum of $10,000.